COURT OF APPEALS
DECISION
DATED AND FILED

September 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2086**

STATE OF WISCONSIN

Cir. Ct. No. 1998CF519

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DARNIAL CRAIG,

   DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Kenosha County: JASON A. ROSSELL, Judge. *Affirmed.*

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Darnial Craig appeals from a circuit court order denying his motion for postconviction relief.  He contends that he is entitled to a new trial based upon newly discovered evidence.  For the reasons that follow, we affirm.

¶2     On the night of March 17, 1998, two men broke into the apartment of Lucy and her then-boyfriend Adam to steal from them.[1]  During the burglary, one of the men sexually assaulted Lucy twice in the bathroom, while the other man sexually assaulted her once in the living room.  The first man, who was armed, then forced Lucy to drive to an ATM to withdraw money and sexually assaulted her again in the car.  Adam was tied up and put in a closet during the assaults.

¶3     The men were later identified as Craig and Lebor Keys.[2]  The State charged Craig with armed burglary as party to a crime, three counts of first-degree sexual assault as party to a crime, one count of first-degree sexual assault, and kidnapping while armed.  His case proceeded to trial.  The State also charged Keys with multiple crimes; however, his case was resolved via pleas.[3]

¶4     At the time of Craig's trial, DNA testing of a vaginal swab taken from Lucy was inconclusive.  Accordingly, the State implicated Craig by other

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use pseudonyms for the victims.  All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Craig was believed to be the armed man who assaulted Lucy in the bathroom and car.  Keys was believed to be the man who assaulted her in the living room.  Both men partially concealed their identities by wearing winter coats with hoods.

[3] Keys pled no contest to burglary, armed robbery, and first-degree sexual assault, all as party to a crime.

means. This included testimony from Lucy, Keys, and an inmate named Edwin. It also included a statement from Craig's mother, his brother, and evidence of his consciousness of guilt when police came to arrest him.

¶5 Ultimately, the jury found Craig guilty on all counts, and the circuit court imposed an aggregate sentence of 140 years in prison. The court ordered the sentence to run consecutive to another sentence Craig was serving for a different armed burglary that he had committed with Keys that same month.[4]

¶6 The parties stipulated to additional DNA testing during postconviction proceedings. The stipulation allowed Craig to submit the remaining vaginal swab taken from Lucy to Dr. Alan Friedman of Helix Biotech, Inc. The stipulation required Dr. Friedman to preserve half of the substance produced from his work for later possible testing by the State. It also required any developed DNA profile to be reported to the State.

¶7 In 2002, Dr. Friedman was able to develop a partial DNA profile from the vaginal swab taken from Lucy; however, his findings were not reported to the State. Soon thereafter, Craig's postconviction counsel moved to withdraw from the case at Craig's request. After a hearing on the matter, the circuit court granted the motion.

¶8 Approximately ten years later, in 2012, Craig contacted the Wisconsin Innocence Project about his case. The Innocence Project arranged to have Bode Technology compare DNA samples from Craig and Keys with the

---

[4] On March 25, 1998, Craig and Keys, while masked, committed an armed burglary together. *See State v. Craig*, No. 2000AP2059-CR, unpublished slip op. (WI App June 27, 2001). During it, Keys sexually assaulted one of the residents of the home. *Id.*, ¶2.

partial DNA profile developed by Dr. Friedman. Bode Technology assigned the job to Sarah Shields, who produced a report. That report excluded Craig as a possible minor contributor to the partial DNA profile; however, it could neither include nor exclude Keys. Nothing more was done on the matter for nearly ten more years.

¶9 In 2022, Craig, with newly retained counsel, filed a motion for postconviction relief. Citing the findings of Dr. Friedman and Ms. Shields, he argued that he was entitled to a new trial based upon newly discovered evidence. The circuit court held multiple evidentiary hearings on the motion—one for each witness.

¶10 At his hearing, Dr. Friedman was unable to recall the detection threshold he used to make his findings or whether he used the entire sample when he did his test. That is because he did not have all of the original records, and the files themselves were destroyed in a basement flood. Still, Dr. Friedman stood by his findings and agreed with the conclusions in Ms. Fields' report, which were based, in part, upon them.

¶11 Meanwhile, at her hearing, Ms. Fields reiterated the conclusions in her report. However, she acknowledged being unable to fact-check Dr. Friedman's findings due to the limited data provided. Likewise, she admitted that her conclusion about Craig was based on the assumption that there was only one minor contributor to the partial DNA profile. If that assumption was wrong and there were multiple minor contributors, then Craig could not be excluded.

¶12 In the end, the circuit court denied Craig's motion. The court determined that Craig was negligent in seeking the evidence at issue. It further

determined that the evidence was inadmissible[5] and therefore not material to the case. Finally, the court concluded that, even if it were wrong about its determinations, there was no reasonable probability of a different outcome. This appeal follows.

¶13 On appeal, Craig renews his request for a new trial based upon newly discovered evidence. To obtain such relief, a defendant must prove four factors: "'(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted). If the defendant establishes all of these factors, the circuit court must then determine whether there is a "reasonable probability" that the jury would have had a reasonable doubt as to the defendant's guilt if it had heard the newly discovered evidence. *Id.*

¶14 Whether to grant or deny a motion for a new trial based upon newly discovered evidence is committed to the circuit court's discretion. *Id.*, ¶31. However, whether there is a reasonable probability that the jury would have had a reasonable doubt as to the defendant's guilt is a question of law that we review independently. *Id.*, ¶33.

---

[5] The circuit court believed that Dr. Friedman's lack of memory in combination with the destruction of his original records made his findings inadmissible on statutory grounds. *See, e.g.*, WIS. STAT. § 907.02 (requiring expert testimony to be based upon sufficient facts or data and the product of reliable principles and methods). It further noted that Craig's failure to abide by the requirements of the parties' stipulation had effectively deprived the State of the ability to test or review Dr. Friedman's findings, which, by then, were over 20 years old. In the court's view, the only remedy and sanction available for such a violation was exclusion.

¶15 Like the circuit court, we have concerns about the admissibility of the newly discovered evidence given the delay in reporting and lack of information available to test or review Dr. Friedman's findings. Assuming without deciding that the evidence is admissible and satisfies the four factors mentioned above, we are not persuaded that Craig is entitled to relief. That is because we are not convinced there is a reasonable probability that the jury would have had a reasonable doubt as to Craig's guilt if it had heard the newly discovered evidence.

¶16 The State's evidence against Craig was strong in this case. At trial, both the main victim (Lucy)[6] and co-actor (Keys) identified Craig as the perpetrator of the crimes. Craig was also implicated by a fellow inmate named Edwin, who recounted Craig telling him that Craig had sexually assaulted a woman during a burglary and was going to get away with it because the woman had initially identified Craig's cousin and the DNA evidence was inconclusive. Likewise, Craig was implicated by statements from his mother and brother. His mother indicated that the man in the ATM surveillance video with the victim was wearing her coat. Meanwhile, Craig's brother gave a statement to police that Craig told him that he and Keys had gone into a house and "tied up some guy" and "raped some girl." Craig asked his brother to lie for him regarding his whereabouts that night, but Craig's brother refused to do so.[7] Finally, a detective

---

[6] Lucy also identified Craig in a photo array before trial. This was not done right away. At first, she mistakenly identified Craig's cousin. She then failed to recognize Craig from an old photo. But in a third try, she recognized Craig from a different photo as well as Keys. The two photos of Craig were dissimilar in appearance.

[7] The statement was signed by Craig's brother. However, at trial, he denied making it.

testified that when police went to Craig's residence to arrest him for the crimes, Craig hid for over four hours, which exhibited a consciousness of guilt.

¶17 By contrast, the newly discovered evidence has limited value. Although Lucy believed that Craig was the one who assaulted her vaginally, she was unsure whether he had ejaculated. Thus, it is unclear whether there was any DNA evidence from the assault. Also, as noted, the partial DNA profile could not exclude Keys as a possible contributor and could only exclude Craig if there was only one minor contributor to it. If there were multiple minor contributors, then Craig could not be excluded either.

¶18 In light of the foregoing, we cannot say that the newly discovered evidence would have made a difference at trial. Accordingly, we are satisfied that the circuit court properly denied Craig's motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.